# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 3:16-cv-00713-RJC

| | |
|---|---|
| HANNAH R. HOLBROOK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **ORDER** |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 11), and Memorandum in Support, (Doc. No. 12), and Defendant's Motion for Summary Judgment, (Doc. No. 14), and Memorandum in Support, (Doc. No. 15).

## I. BACKGROUND

### A. Procedural Background

Plaintiff Hannah R. Holbrook ("Plaintiff") seeks judicial review of Defendant Social Security Commissioner's ("Defendant" or "Commissioner") denial of her social security claim. (Doc. No. 1). On April 14, 2012, Plaintiff filed her application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 405 et seq. (Doc. Nos. 10 to 10-8: Administrative Record ("Tr.") at 142). In her application, Plaintiff alleged an inability to work due to disabling conditions beginning on April 10, 2012. (Id. at 115). Plaintiff's application was denied initially on September 4, 2012 and again upon reconsideration on February 8, 2013. (Id.). A hearing was then held on November 5, 2013 before Administrative Law Judge ("ALJ") Jane A. Crawford

where Plaintiff's mother and a vocational expert provided testimony. (Id. at 20–75, 115). On March 27, 2015, the ALJ denied Plaintiff's claims and the Appeals Council thereafter denied Plaintiff's request for review, rendering the ALJ's decision the final determination of Defendant. (Id. at 1–7, 112–35).

  B. Factual Background

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between April 14, 2012, the date of her application, and March 27, 2015, the date of the ALJ's decision.[1] (Id. at 115). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ ultimately concluded that Plaintiff was not under a disability at any point in the relevant timeframe. (Tr. at 128–29).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;
> (4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and

---

[1]  Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

> (5) whether considering claimant's RFC, age, education, and work experience he or she can make an adjustment to other work—if yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i–v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. at 128–29).

To begin with, the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity since April 14, 2012, the date of her application. (Id. at 117). At the second step, the ALJ found that Plaintiff had the following severe impairments: "polycystic ovarian syndrome; bipolar disorder; general anxiety disorder; depression; and bulimia nervosa." (Id.). At the third step, the ALJ determined that Plaintiff did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1." (Id. at 118).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, routine tasks in a job that does not require assembly line pace or adherence to strict production quotas; she can maintain frequent contact with coworkers and supervisors and occasional, superficial contact with the public; and the claimant cannot work in environments where she would be working with food.

(Id. at 120). In making her finding, the ALJ specifically stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Id.). The ALJ further opined that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs [Social Security Rulings] 96-2p, 96-5p, 96-6p and 06-3p." (Id.).

At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work. (Id. at 127). Finally, at the fifth and final step, the ALJ concluded that, after "considering

[Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Id. at 128). Therefore, the ALJ determined that Plaintiff was not under a "disability," as defined by the Social Security Act, between April 14, 2012, and March 27, 2015, the date of the ALJ's decision.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the

Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

On appeal before this Court, Plaintiff argues that the ALJ erred in: (1) not providing a full function-by-function analysis of the nonexertional mental functions associated with Plaintiff's mental impairments; (2) not explaining why limitations contained in medical opinions otherwise given great weight to were not included in the RFC findings; and (3) rejecting the opinion of Plaintiff's treating psychiatrist without giving adequate reasoning. (Doc. No. 12).

**A.** The ALJ adequately determined Plaintiff's RFC through a function-by-function analysis.

1. Plaintiff's moderate limitation in concentration, persistence or pace.

In determining Plaintiff's RFC, the ALJ found that Plaintiff "can perform simple, routine tasks in a job that does not require assembly line pace or adherence to strict production quotas." (Tr. at 120). Plaintiff maintains that this limitation does not adequately address the moderate limitation in Plaintiff's concentration, persistence or pace found during step three. (Doc. No. 12 at 7). Specifically, Plaintiff claims that the ALJ failed to explain how Plaintiff possessed the ability to stay on task. (Id.).

"[T]he ability to perform simple tasks differs from the ability to stay on task." Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). "Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. As such, limiting a claimant's RFC to simple, routine tasks or unskilled work does not alone address any moderate limitations in that claimant's concentration, persistence or pace. In reaction to this rule, the Court has come

across opinions where the ALJ added another limitation: working at a non-production pace. It is true that this court has, along with many of the other district courts in North Carolina, found that the limitation of nonproduction pace alone does not sufficiently account for a moderate limitation in concentration, persistence, or pace in light of Mascio. Kittrell v. Colvin, No. 5:14-cv-163-RJC, 2016 U.S. Dist. LEXIS 33929, at *11 (W.D.N.C. Mar. 16, 2016) (unpublished).[2] It is also true that other courts have found that such a limitation *does* adequately address impairments in concentration, persistence or pace when either supported by the medical record or when added to other limitations, such as a stable work environment.[3]

Turning to Plaintiff's RFC, the ALJ found the limitations of performing "simple, routine tasks in a job that does not require assembly line pace or adherence to strict production quotas."

---

[2] Citing Biddell v. Colvin, No. 1:15-cv-80-MOC, 2016 U.S. Dist. LEXIS 24404, 2016 WL 815300, at *5 (W.D.N.C. Feb. 29, 2016) (unpublished); Weeks v. Colvin, No. 5:14-cv-155-D, 2015 U.S. Dist. LEXIS 119238, 2015 WL 5242927, at *2 (E.D.N.C. Sept. 8, 2015) (unpublished); Jones v. Colvin, No. 4:14-cv-200-RN, 2015 U.S. Dist. LEXIS 106622, 2015 WL 4773542, at *4 (E.D.N.C. Aug. 13, 2015) (unpublished); Hagedorn v. Colvin, No. 2:12-cv-85-RLV, 2015 U.S. Dist. LEXIS 94071, 2015 WL 4410288, at *4 (W.D.N.C. July 20, 2015) (unpublished); Salmon v. Colvin, No. 1:12-cv-1209-LCB, 2015 U.S. Dist. LEXIS 43334, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) (unpublished). Id. at *11–13 n.3.

[3] See, e.g., Gordon v. Berryhill, No. 3:16-cv-130, 2017 WL 5759940, 2017 U.S. Dist. LEXIS 195089, at *6–7 (W.D.N.C. Nov. 28, 2017) (unpublished); Jarek v. Colvin, 3:14-CV-620-FDW-DSC, 2015 WL 10097516, at *5 (W.D.N.C. Sept. 4, 2015) (unpublished) *adopted by* 2016 WL 626566 (W.D.N.C. Feb. 16, 2016) *aff'd by* 2017 WL 129024 (4th Cir. Jan. 13, 2017) (finding that the limit of "repetitive tasks *not at an assembly line pace*" did account for limitations in concentration, persistence or pace); White v. Colvin, No. 1:14-CV-161-RLV, 2016 WL 1600313 (W.D.N.C. Apr. 21, 2016) (unpublished); Horning v. Colvin, No. 3:14-CV-722-RJC, 2016 WL 1123103 (W.D.N.C. Mar. 21, 2016) (unpublished); Linares v. Colvin, No. 5:14-cv-120-GCM, 2015 U.S. Dist. LEXIS 93291, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) (unpublished); but see Hagedorn v. Colvin, No. 2:12CV85-RLV, 2015 WL 4410288, 2015 U.S. Dist. LEXIS 94071, at *10 (W.D.N.C. July 20, 2015) (unpublished) (finding that limiting a claimant to "simple, routine, and repetitive tasks in a low-production work setting with no extensive interaction with co-workers and no public contact, and that the work environment should be low-stress, defined as occasional change in job setting or decision making" accounted for some of the mental limitations found in SSR 96-8p, but nonetheless failed to address a limit in concentration).

(Tr. at 120). The limitation from assembly line pace mirrors the limitation to non-production pace discussed above. The Court finds that Plaintiff's RFC sufficiently accounts for a moderate limitation of concentration, persistence or pace. Limiting a claimant to strict production quotas addresses impairments to concentration-related issues. Martin v. Colvin, No. 1:14-CV-234, 2015 U.S. Dist. LEXIS 168689, at *12 (W.D.N.C. Dec. 16, 2015). Additionally, assembly line limitations address impairments with exactly what it sounds like: pace. See Linares, 2015 WL 4389533, at *4 (finding a limit to nonproduction pace pertains to a plaintiff's limitation to pace).

Not only does the ALJ's RFC determination address concentration, persistence or pace, her narrative function-by-function analysis supports her overall conclusion. The ALJ applied great weight to State agency psychological consultants' mental assessments. (Tr. at 124–25). In doing so, the ALJ specifically noted that the consultants found Plaintiff could

> understand and remember simple instructions, but would have difficulties with more detailed instructions; she would be able to complete simple tasks and work procedures and be able to make work decisions but would have difficulties with maintaining attention and concentration for extended periods and would have difficulties carrying out detailed instructions.

(Id.). By explicitly incorporating the narrative discussion of Plaintiff's mental RFC made by the state psychological consultants, the ALJ fulfilled her duties to complete a function-by-function analysis. See Linares, 2015 WL 4389533 at *3 ("Because the ALJ based his RFC finding, in part, on the function-by-function analysis of the State agency consultant, the ALJ's function-by-function analysis complied with SSR 96-8p.") (citing Lemken v. Astrue, No. 5:07-CV-33-RLV-DCK, 2010 U.S. Dist. LEXIS 128659, 2010 WL 5057130, at *8 (W.D.N.C. July 26, 2010) ; Onishea v. Barnhart, 116 Fed. Appx. 1, 2004 WL 1588294, at *1 (5th Cir. 2004)). It was after incorporating the above RFCs that the ALJ assigned the limitations of no assembly line pace or adherence to strict production quotas.

Despite the ALJ's additional limits, Plaintiff claims that the ALJ failed to address her ability to stay on task. She argues that simple, routine, repetitive tasks fail to address this ability. The Court agrees with this latter assertion, but notes that Plaintiff ignores the full picture. The ALJ did not merely limit Plaintiff's RFC to simple, routine, repetitive tasks. She also specifically included the limitations of no assembly line pace or adherence to strict production quotas. As mentioned above, these limitations fully address a moderate impairment of concentration, persistence or pace. These limitations cater to the narrative RFC of the state agency consultants and tailor the average workday to maximize Plaintiff's ability to concentrate despite given her moderate difficulties.

Pointing to the record, Plaintiff argues that the ALJ failed to ask the vocational witness about Plaintiff's ability to stay on task. (Doc. No. 12 at 8). She also emphasizes that the psychological consultants found moderate difficulties in her ability to complete a full workday or workweek. (Id.). In highlighting the record, Plaintiff applies an overly broad interpretation of Mascio by demanding a detailed analysis of Plaintiff's ability to stay on task every time an ALJ finds moderate limitations in concentration, persistence or pace. Mascio does not stand for such a proposition. Mascio declined a per se rule requiring remand where ALJs fail to perform explicit function-by-function analyses. Rather, the Court found that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review. Id. at 636. Remand is not necessary where functions are "irrelevant or uncontested." Id. Here, two critical distinctions separate Plaintiff's case from the one in Mascio. First, Plaintiff does not point to contradictory evidence within the record, but merely the absence of an explanation on how Plaintiff can stay on task. (Doc. No. 12 at 7–8). In fact, Plaintiff only

highlights the moderate limitations found by the state consultants that the ALJ already incorporated into her RFC analysis. (Id. at 8). Second, as mentioned above, the ALJ here provided limitations that directly address impairments to concentration, persistence, or pace. Plaintiff essentially attempts to hold the ALJ to the per se rule the Fourth Circuit explicitly rejected in Mascio.

      2. Plaintiff's moderate limitation in social functioning.

Plaintiff next argues that the ALJ failed to adequately assess the effect of Plaintiff's difficulties in social functioning on her ability to engage in sustained work activities. (Doc. No. 12 at 9). Specifically, Plaintiff asserts that the ALJ's opinion lacks sufficient detail regarding Plaintiff's response to supervision, criticism, correction, or getting along with coworkers. (Id.). Defendant responds, arguing that the ALJ addressed Plaintiffs social functioning impairments by applying the limitation of only occasional and superficial contact with the public and frequent (as opposed to constant) contact with coworkers and supervisors. (Doc. No. 15 at 6). Defendant further points to Plaintiff's own statements in the record regarding her respect to authority to support the given RFC limitations. (Id.).

The Court again agrees with Defendant. As with her limitations for concentration, persistence or pace, the ALJ afforded great weight to the state psychological consultants' RFC determination regarding social interaction limitations. (Tr. at 125). The ALJ pointed to the consultants' conclusion that Plaintiff "would be able to cooperate and be socially appropriate but would have difficulties accepting criticism from supervisors." (Id.). This was the stricter of the two conclusions. Where Dr. Reback found no significant limitations in her ability to ask simple questions, request assistance, accept instructions and respond appropriately to criticism from supervisors, Dr. Weber found a moderate limitation. (Id. at 87, 105).

Plaintiff argues that the inconsistencies between the no limitation and moderate limitation found in regard to her ability to respond to supervision were inadequately addressed by the ALJ. (Doc. No. 12 at 10). Upon review, however, the Court finds that the ALJ explicitly included the more restrictive view within her RFC analysis, rendering any error harmless at most. (Id. at 125). Furthermore, the record supports the ALJ's determination. The ALJ previously noted that Plaintiff herself admitted that she had no problems with authority. (Tr. at 119). She stated that she respects authority to the fullest and was never fired or laid off from a job because of problems getting along with people. (Tr. at 278).

3. Plaintiff's mild limitation in Daily functioning.

Finally, Plaintiff takes issue with ALJ's failure to discuss the effect of Plaintiff's mild restriction in activities of daily living on her RFC analysis. (Doc. No. 12 at 10–12). Plaintiff again points to Mascio and SSR 96-8p. (Id.). However, the ALJ here found that Plaintiff had *mild* difficulties in daily living activities where Mascio pertained to *moderate* limitations in concentration, persistence, and pace. (Tr. 119). This Court does not interpret Mascio's holding as applying to all levels of restrictions.[4] See Brooks v. Berryhill, No. 3:15-CV-00440-RJC, 2017 WL 1196449, at *4 (W.D.N.C. Mar. 29, 2017) (holding that "Mascio dealt with 'moderate' restrictions and did not hold that all restrictions, including mild restrictions, be explicitly discussed in terms of RFC."); see also Gilbert v. Berryhill, No. 5:16-CV-00100-MOC, 2017 WL 1196452, at *3 (W.D.N.C. Mar. 29, 2017) (finding that Mascio did not apply to cases of mild difficulties); Roberson v. Colvin, No. 3:14–cv–00488–MOC, 2016 WL 5844148, at *6 (W.D.N.C. Oct. 4, 2016)

---

[4] This Court recognizes the differing views regarding this issue. See, e.g., Reinhardt v. Colvin, No. 3:14-CV-00488-MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015) (finding that the ALJ failed to provide a detailed assessment of the plaintiff's mild mental limitations in the body of the RFC discussion).

(unpublished) (finding that, because the case "concerns only 'mild difficulties,' it [did not] trigger the RFC discussion requirements of Mascio per se."). Because the ALJ found mild, not moderate, restrictions in Plaintiff's daily living activities, this Court does not find Plaintiff's argument persuasive.

B. The ALJ Did Not Err in Her Assessment of Opinion Evidence.

Plaintiff focuses next on the state consultant findings to argue that the ALJ erred when she failed to address or incorporate other limitations within those conclusions. (Doc. No. 12 at 12). For instance, both state psychological consultants both found Plaintiff moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. They also found Plaintiff moderately limited in her ability to perform at a consistent pace without an unreasonable number and length of rest periods. (Id. at 12) (citing Tr. at 86, 105). These limits were not explicitly mentioned in Plaintiff's RFC.

Plaintiff also points out that the two state agency consultants differed in determining Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors. (Id. at 14). Defendant argues first that it is the narrative RFC that the ALJ should give weight to, not the individual questions asked beforehand that are meant to help the consultant reach the ultimate narrative conclusion. (Doc. No. 15 at 9–10). Furthermore, Defendant states that the inconsistent findings regarding Plaintiff's reaction to supervision are minor. The ALJ nonetheless applied a moderate limitations in social functioning and Plaintiff herself mentioned that she had no problems with figures of authority. (Doc. No. 15 at 10–11).

Turning first to the moderate limitations within the state agency consultant reports, the Court notes that an ALJ is not required to adopt an opinion wholesale after affording it great

weight.[5] That being said, despite finding moderate limitations in both Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and her ability to perform at a consistent pace without an unreasonable number and length of rest periods, both consultants nonetheless found that Plaintiff could complete simple tasks and work procedures. (Tr. at 86, 105). It is this overall narrative conclusion that the ALJ agreed with. What limitations Plaintiff does have with the ability to complete normal workdays and workweeks without interruptions or to perform at a consistent pace have been incorporated into Plaintiff's RFC.

As for the inconsistencies between the two state consultants, the Court does not find that these differences undermine the ALJ's RFC determination. Despite the different conclusions regarding Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors, both consultants nonetheless arrived at similar narrative conclusions about Plaintiff's social functioning. Dr. Reback found that Plaintiff "[w]ould be able to cooperate and be socially appropriate but may at times had difficulty dealing with the general public." (Tr. at 105). Dr. Weber found that Plaintiff "[w]ould be able to cooperate and be socially appropriate" but added that Plaintiff "would have difficulties accepting criticism from supervisors." (Tr. 87). The ALJ specifically incorporated Dr. Weber's more restrictive limitation regarding supervisors in her RFC determination. (Tr. at 125). Thus, in the face of inconsistencies, the ALJ gave Plaintiff the benefit of the stricter limitation. Cf. Mascio, 780 F.3d at 637 (demanding explanation where the ALJ

---

[5]   Geary v. Colvin, No. 1:15CV00579, 2016 WL 3039835, at *11 (M.D.N.C. May 27, 2016) (citing Bennett v. Colvin, No. 3:13-CV-01176, 2015 WL 153950, at *13 (M.D. Tenn. Jan. 12, 2015) (unpublished); Razey v. Colvin, No. 14-23, 2014 WL 4792150, at *2 (W.D. Pa. Sept. 23, 2014) (unpublished); Lambert–Newsome v. Astrue, 2012 WL 2922717 at * 6 (S.D. Ill. July 17, 2012) (unpublished); Irvin v. Astrue, 2012 WL 870845 at * 2–3 (C.D. Cal. March 14, 2012) (unpublished)).

inexplicably chose the less strict limitation between two state agency examiners' conclusions). Additionally, the ALJ had previously pointed to Plaintiff's statement that she respects authority to the fullest and was never fired or laid off from a job because of problems getting along with people. (Tr. at 119, 278). Together, it is clear that the ALJ incorporated the more restrictive view of Plaintiff's response to supervision and determined her RFC after combining the more restrictive view with Plaintiff's own admissions.

### C. The ALJ Did Not Err in Reducing the Weight Given to Plaintiff's Treating Physician's Opinion.

Next, Plaintiff argues that the ALJ rejected Dr. Birkmire's, Plaintiff's treating physician's, opinion without giving good reason to do so. (Doc. No. 12 at 26). In her opinion, the ALJ gave little weight to Dr. Birkmire's findings, stating that Dr. Birkmire's conclusions were not supported by his own treatment records or the records created by Tapestry, a therapy center where Plaintiff received treatment for bulimia. (Id. at 125–26). The ALJ also stated that Dr. Birkmire's opinion was over two years old, which reduces the conclusions' ability to reflect Plaintiff's current level of functioning. (Id.). Plaintiff argues that the ALJ's reasoning is inadequate because, as a layperson, the ALJ is not qualified to interpret raw medical data in functional terms. (Doc. No. 12 at 18). Furthermore, Plaintiff argues that, even though Dr. Birkmire's opinion is two years old, it is still within the relevant scope of the opinion—that is, between April 14, 2012[6] and March 27, 2015. (Id. at 19). Plaintiff also points out that the ALJ relied on other opinions that were just as old as Dr. Birkmire's opinion. The state psychological consultant opinions, for instance, dated September 2012 and February 2013 respectively. (Id.). Defendant responds, arguing that the ALJ did in fact give adequate reasons for affording Dr. Birkmire's opinion little weight. The ALJ

---

[6] Plaintiff lists April 10, 2012 as the beginning of the ALJ's considered period, but a review of the ALJs decision shows that April 14, 2012, the date of Plaintiff's application, as the beginning of the relevant period of time. (Tr. at 115).

characterized Dr. Birkmire's findings as "relatively brief, vague, and difficult to read." (Tr. at 122).

The Court agrees with Plaintiff that the ALJ's reliance on the date of Dr. Birkmire's opinion to reduce its credibility is not persuasive. However, the Court ultimately agrees with Defendant that this was a harmless error. The ALJ gave sufficient alternate reasons to afford Dr. Birkmire's opinion little weight. To start with, it is well within the role of the ALJ to assign less weight when an opinion does not correlate to other evidence within the record. "Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (quoting Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)). No, a treating physician's opinion only receives controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Id. The corollary to this rule is that ALJs must give less weight to treating physician opinions if those opinions are inconsistent with other substantial evidence. Id. (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

Here, the ALJ detailed the findings of Dr. Birkmire and specifically contrasted them to the treatment records of Tapestry she listed earlier in her opinion. (Tr. at 124–25). Additionally, the ALJ listed the contrary findings of the state agency consultants immediately before the findings of Dr. Birkmire. As Plaintiff mentioned, these opinions were made within a similar timeframe as Dr. Birkmire's. That being true, it becomes obvious that those opinions, which were written after reviewing the medical record, also prove that Dr. Birkmire's conclusions did not align with other evidence in the record. Furthermore, the ALJ determined that the opinion itself was less than informative and difficult to read. (Tr. at 122). As Defendant points out, on April 9, 2013, Dr.

Birkmire rated Plaintiff's depression and anxiety 2/10 and commented that plaintiff was "doing well." (Tr. at 576). Only nine days later, on April 18, 2013, Dr. Birkmire then found that Plaintiff had severe depression and anxiety with a poor prognosis. (Tr. at 601). Such a drastic inconsistency reveals ample reason for an ALJ to afford less weight to a treating physician's opinion.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 11), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 14), is **GRANTED**;

3. The Clerk of Court is directed to close this case.

Signed: January 5, 2018

Robert J. Conrad, Jr.
United States District Judge

SEALED DOCUMENT with access to All Parties/Defendants.